# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0603
Filed July 22, 2026

————————————

**In the Interest of M.D. and A.D., Minor Children,**

**A.J., Father,**
Appellant.

————————————

Appeal from the Iowa District Court for Polk County,
The Honorable Kimberly Ayotte, Judge.

————————————

**AFFIRMED**

————————————

Sarah M. Yaske, West Des Moines, attorney for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Sarah E. Dewein of Cunningham & Kelso, P.L.L.C., Urbandale, attorney
and guardian ad litem for minor children.

————————————

Considered without oral argument
by Tabor, C.J., Chicchelly, J., and Mullins, S.J.
Opinion by Chicchelly, J.

1

**CHICCHELLY, Judge.**

A father appeals the termination of his parental rights to two children born in June 2025. He contends that termination is not in the children's best interests and that termination would be detrimental to the children due to the strength of the parent-child bond. Because clear and convincing evidence shows that termination serves the children's best interests, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

M.D. and A.D. were born in June 2025. Their mother had her parental rights to four children terminated in November 2024 because of substance-use and mental-health issues. The mother admitted she used ecstasy and marijuana while pregnant with M.D. and A.D., and drug testing of the children's umbilical cords showed a positive result for THC, amphetamine, and methamphetamine. As a result, the juvenile court removed the children from the mother's custody. The Iowa Department of Health and Human Services (HHS) placed the children in foster care with a family who adopted one of their siblings. The juvenile court adjudicated the children in need of assistance (CINA) in August.

The father's paternity was confirmed in October. The father was incarcerated with release expected in 2032. Although the juvenile court denied the State's request to waive reasonable efforts, the services offered by HHS were limited by the father's incarceration. HHS provided photos of the children and video visits.

In January 2026, the juvenile court terminated the mother's parental rights and modified the permanency goal to termination of the father's parental rights and adoption. The State petitioned to terminate the father's parental rights in February. After a March hearing, the juvenile court

2

terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (h) (2026).

## SCOPE AND STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). While not binding on us, we give weight to the juvenile court's fact findings, "particularly with respect to credibility determinations." *Id.*

## DISCUSSION

We employ a three-step analysis to review termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

> First, we determine whether any ground for termination under section 232.116(1) has been established. If we determine that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights. Finally, if we conclude the statutory best-interest framework supports termination, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights.

*Id.* at 472–73 (internal quotation marks and citations omitted). Because the father does not challenge the grounds for termination, we do not address them. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

## I. Does terminating the father's parental rights serve the children's best interests?

The father first contends that the State did not show that it is in the children's best interests to terminate his parental rights. He claims that preserving his parental rights will not jeopardize the children's safety. He also argues that he is taking responsibility for his crimes by serving his

sentence and will receive services during his incarceration that will resolve the concerns that led to the children's removal.

Iowa Code section 232.116(2) lays out the framework for what we refer to as the "best-interest test." *Id.* at 37. In deciding whether termination is in a child's best interest, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We also "look to the child's long-range as well as immediate interests, consider what the future holds for the child if returned to the parents, and weigh the child's safety and need for a permanent home." *In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019) (cleaned up).

The father is currently serving a prison sentence for drug-related crimes. His criminal history, which dates back to 2010, also includes convictions for first-degree sexual assault and domestic abuse, as well as multiple convictions for failing to register as a sex offender. He has been in prison since before the children were born with a tentative discharge date in 2032. He has never provided for the children's care or financial support, and he has three other minor children for whom he does not provide financial support.[1]

The father's first opportunity for parole will come in October 2026, when the children are sixteen months old. But the father has been unsuccessful when granted probation or parole in the past. The father concedes that it is not in the children's best interests to be placed in his care

---

[1] The father also has a child who was twenty-one years old at the time of the termination hearing.

and custody at the present, and indeed, his imprisonment prevents it. Instead, he believes the children's best interests are served by placing them with his mother, who lives in Chicago.

Even if the father is granted early release, he cannot assume custody of the children until he shows he can comply with the conditions of his parole, address the safety concerns related to his crimes, develop an in-person relationship with the children, and show safe parenting. But the father does not expect to live with the children after his release. When asked how he would continue a relationship with the children if they were placed with his mother, the father testified, "I would, first off, once upon release getting a job, so I can maintain financial responsibility for myself, for starters. And then I can travel back and forth to see them, or my mom can bring them up to see me."

In contrast to the uncertain future the children would face with the father, the children are in a home with an adopted sibling and have ongoing contact with their other siblings. Their current placement meets the children's needs and is willing to adopt them. Terminating the father's parental rights to allow for their adoption serves the children's best interests by providing them with the safety and permanency they need, which the father cannot provide.

## II. Would termination be detrimental to the children based on the closeness of the parent-child bond?

The father also argues that the court should not terminate his parental rights based on the close parent-child bond he shares with the children. *See* Iowa Code § 232.116(3)(c) ("The court need not terminate the relationship between the parent and child if the court finds . . . clear and convincing evidence that termination would be detrimental to the child at the time due

to the closeness of the parent-child relationship."). But before we will apply section 232.116(3)(c) to preserve the father's parental rights, he must provide clear and convincing evidence showing "that, on balance, [the closeness of the parent-child] bond makes termination more detrimental than not." *W.M.*, 957 N.W.2d at 315.

The father cannot show that terminating his parental rights will be detrimental to the children. As noted above, the father has been incarcerated since the children's birth. He has no in-person relationship with them and will not have an opportunity to develop one until the children are about sixteen months old. The record does not show any significant parent-child bond, let alone one so strong that termination would be detrimental to the children. The father has not shown that section 232.116(3)(c) applies.

**AFFIRMED.**